1  STEVEN H. LORBER (SBN 97287)
   **LORBER-NELSON, LLP**
2  12526 High Bluff Drive, Suite 300
   San Diego, California 92130
3  Telephone: 858.792.3477
   Facsimile: 866.546.4943
4
5  Attorneys for Plaintiff
   ART MORGENSTEIN
6

FILED
2008 JUN 25 PM 2:30
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ KNH _____ DEPUTY

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ART MORGENSTEIN, <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN AIRLINES, INC., a Delaware corporation, <br><br> Defendant. | CASE NO. '08 CV 1135 DMS LSP <br><br> COMPLAINT FOR: <br> FALSE IMPRISONMENT, INTENTIONAL MISREPRESENTATION, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, NEGLIGENCE, NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS, BREACH OF CONTRACT, STRICT LIABILITY <br><br> REQUEST FOR JURY TRIAL |

Plaintiff, Art Morgenstein, complains of defendant American Airlines, and for causes of action, respectfully alleges:

### JURISDICTION AND VENUE

1.  The amount in controversy as to claims for plaintiff, exclusive of interest and costs, is in excess of $75,000.

2.  This Court has jurisdiction over the matter under 28 U.S.C.A. §1332 in that it is a civil action between a natural person, a resident of California, and a corporation incorporated under the laws of Delaware.

3.  American Airlines is a airlines that regularly does business in San Diego County. Venue is proper in this district under 28 U.S.C. §1391, because American Airlines does business in this district.

COMPLAINT
- 1 -

## PARTIES

4. Plaintiff is and at all times asserted was a resident of California, residing in the County of San Diego, State of California.

5. Defendant is and at all times asserted was a corporation duly organized under the laws of Delaware, and licensed to do business in California.

6. Plaintiff is informed and believe and thereon allege that said defendants, and each of them, was and are the agents, servants, representatives, assignees, successors, employees, alter egos, independent contractors, partners, joint venturers, and/or employees of each or some of the other defendants, and in doing the acts herein referred to, was acting within the course and scope of their authority, with the express and/or implied approval, permission, knowledge, consent and ratification of all defendants.

## FACTUAL ALLEGATIONS

7. Defendant is an airline carrier for passengers, and is, therefore, subject to the highest degree of care in assuring the safety, health, care and well being in the transportation of its passengers.

8. Plaintiff purchased a ticket for a flight from La Guardia Airport (La Guardia), in New York, on American Airlines, to fly to Miami, Florida.

9. Plaintiff's ticket was issued by defendant on or about June 13, 2007 for flight 1319, departing on June 27, 2007.

10. On June 27, 2007, plaintiff boarded flight 1319, on time, at the La Guardia Airport, in New York, which flight was destined for Miami, Florida.

11. Approximately ten to fifteen minutes after the doors were shut and the airplane was commencing to taxi, plaintiff started feeling an excruciating pain in the back.

12. Plaintiff had never experienced such acute pain in the entire life. He immediately summoned a flight attendant to notify her of the severe and unbearable pain he was feeling.

13. The flight attendant's response to plaintiff was for him to be quiet and remain in his seat.

14. While the plane was continuing to taxi for take off, the pain plaintiff was experiencing continued to increase in severity.

15. Plaintiff became increasingly alarmed by the severe and excruciating pain he had never experienced before, and he summoned the flight attendant again, explaining he was in pain, and he needed to be let off the plan to seek some medical attention.

16. The flight attendant's response to plaintiff was the same: that is, for plaintiff to remain in his seat and be quiet.

17. Plaintiff is informed and believes that the policies and procedures of American Airlines is to let passengers who are ill off the plane if they make that request.

18. The captain then came over the speaker system to notify the passengers the flight was being delayed.

19. Plaintiff, again, in desperation summoned the flight attendant, yet again, requesting he be let off the plane because he was ill and needed to find out what was wrong with him.

20. Again, the flight attendant ignored plaintiff's notification he was in excruciating pain and needing medical attention, warning plaintiff to be seated and be quiet.

21. The plane was remaining on the tarmac nearly thirty to forty minutes. During this time, plaintiff's pain did not cease or even subsist. Instead, plaintiff's pain commenced to travel from the back toward the front and in the abdomen as well, and was resonating everywhere in the region of the back, groin and abdomen.

22. Again, plaintiff summoned the same flight attendant to notify her he was still in pain and demanding he be left off the plane to get medical attention.

23. In response to plaintiff's persisting he was in pain and needing medical attention, the flight attendant's arrogance culminated in threatening plaintiff with arrest by federal marshals who will handcuff plaintiff and escort him off the plane, unless he didn't "shut up and remain seated."

24. The flight path taken by flight 1319 was over the continental United States for a period of at least three and one-half hours, during which time the plane could have been diverted.

25. Many airports throughout the continental United States exists at which flight 1319 could have made an emergency landing so that plaintiff could have received the emergency medical care he needed.

26. Instead, plaintiff was treated in an unconscionable manner when he was told to sit down and shut up, and thereafter literally ignored for approximately a little over an hour before help was summoned.

27. After approximately thirty minutes into the flight, the flight attendant allowed me to leave my seat and lie down in the galley area in the rear of the plane.

28. That was the first time the flight attendant informed the captain of plaintiff's medical condition.

29. An announcement was made to the passengers on the flight, requesting any medical doctor on flight to assist in the medical emergency presented by plaintiff's condition.

30. A person claiming to be a medical doctor came to the aid of plaintiff.

31. After some interaction with the plaintiff and an examination, the medical doctor informed the captain he believed plaintiff was experiencing a severe kidney stone attack.

32. Only at that time, was any consideration given to the possibility of diverting the flight to land for emergency medical attention.

33. The captain decided, based on the medical doctor's belief, that diverting to land at another airport was not necessary.

34. Nevertheless, during the flight the medical doctor advised the captain to call for emergency medical assistance so when the flight arrived plaintiff would be met at the plane by emergency medical technicians.

35. Plaintiff was given copious amounts of liquor to kill the pain, including six bottles of scotch.

36. As plaintiff was being let off the plane, the flight attendant who had refused plaintiff's repeated requests to be let off the plane, attempted to justify her abrasive and insensitive actions to plaintiff, stating words to the effect, she was sorry and thought plaintiff was

COMPLAINT
- 4 -

1  a nut case; that she didn't believe plaintiff when he said he was sick and needing medical
2  attention.
3      37.    Plaintiff was escorted off the plane by stretcher by emergency medical technicians
4  waiting for plaintiff in Miami.
5      38.    Prior to departing for the hospital for medical care, plaintiff's blood pressure and
6  heart rate were taken; and an EKG was performed. Plaintiff's blood pressure was registered in or
7  around 42.
8      39.    By this time, plaintiff was experiencing syncope, was weak and dehydrated. He
9  was intubated and oxygen was applied in the ambulance.
10     40.    Plaintiff was taken to the emergency room at Coral Gables Hospital, a county
11 hospital of Miami-Dade County, in Florida.
12     41.    Because plaintiff was at a County hospital, his medical condition was not
13 diagnosed as serious a condition as other patients in the hospital, and plaintiff's case did not take
14 priority, as a consequence.
15     42.    Plaintiff therefore, was caused to wait an additional four to five hours, prior to
16 receiving medical care, including a battery of tests, and finally administered pain medication.
17     43.    Plaintiff was diagnosed with kidney stones, or acute renal colic.
18     44.    Plaintiff was discharged approximately Six and one half hours after his arrival, at
19 approximately 12 a.m. in the morning.
20     45.    Prior to discharge, plaintiff was instructed on further self-care, including filling
21 and taking a prescription for pain medication.
22     46.    Because no pharmacy existed with the Coral Gables Hospital, plaintiff was
23 required to take a cab to locate a 24-hour pharmacy, in Miami.
24     47.    Plaintiff was able to locate a pharmacy, after a couple of hours, and arrived at a
25 hotel for sleep accommodations, at approximately 4 a.m.
26     48.    By the time of his arrival at the hotel, plaintiff had already been without food for
27 ovr fourteen hours; and, plaintiff was exhausted and feeling like he had "been through a war."
28

49. On his return flight home, plaintiff was scheduled to fly American Airlines from Miami to the La Guardia Airport, which flight was being delayed for several hours.

50. Consequently, inasmuch as plaintiff was on pain medication, required to maintain consistent hydration, and continuing to feel exhausted from the ordeal the previous say, plaintiff requested American Airlines accommodate his request for an earlier departure time (from Miami) than that for which he had been originally scheduled.

51. Plaintiff explained to several representatives of American Airlines, including several supervisors, that he was sick and needed to get home immediately.

52. Despite plaintiff's imploring these representatives of American Airlines to accommodate his request for an earlier departure, plaintiff had to "act like a crazy person" before these representatives believed plaintiff that he was sick and needed to go home immediately.

53. These same American Airlines representatives required plaintiff prove his illness, and plaintiff was, therefore, required to unpack his bags to locate the hospital admission and other medical records that had been provided him the previous day, at Coral Gables Hospital.

54. The time during which plaintiff was required to undergo scrutiny by these representatives of American Airlines, in an endeavor to catch an earlier flight, was approximately two hours.

55. During this time of plaintiff's trying to convince American Airlines that he was indeed sick, plaintiff was having to repeatedly go to the restroom to urinate because he had been instructed, by the physicians, at Coral Gables, to maintain consistent hydration otherwise he will risk another attack of kidney stones, due to dehydration.

56. As a result, the representatives of American Airlines were, in addition to being distrusting of plaintiff's medical condition, irritated by plaintiff's repeatedly having to leave the check-in desk to go to the restrooms.

57. From the time plaintiff was discharged from Coral Gables Hospital, the previous day to the time of his return to New York, plaintiff was on a high dosage of codeine, including during the time he was at the Miami airport, and in flight from Miami to New York.

58. During this approximate three and one-half hour flight, plaintiff was also having to repeatedly go to the restroom to urinate, including within a three and one-half hour flight a total of approximately ten times, as a result of his having had to drink enormous quantities of water, pursuant to the orders of the physicians at Coral Gable Hospital, the previous day.

59. During the entire flight, from Miami to New York, plaintiff remained in fear of another kidney stone attack, and in addition to repeatedly having to go to the restroom, was also uncomfortable.

60. Upon his arrival, at J.F. Kennedy Airport (LaGuardia), plaintiff was required to wait for a cab, in inclement weather, for a ride home. As a result of the inclement weather, the ride home was an additional hour and plaintiff was also required to pay additional cab fare as a result.

61. Due to the delay in treatment caused by the actions of defendant and its employees and agents, acting with the course and scope of their employment, plaintiff underwent unnecessary pain and suffering, including severe emotional distress.

62. Defendant and its employees and agents, acting within the course and scope of their employment, at all times material, were a common air carrier engaged in the business of transporting fare-paying passengers on regularly scheduled domestic flights, over definite designated routes, on an aircraft owned, leased, operated, managed, controlled, and maintained by its representatives, agents and/or employees, acting within the course and scope of their employment.

63. Furthermore, defendant and its employees and agents, crew, personnel, representatives, assignees, successors, independent contractors, partners, and/or joint venturers, were at all times material the owner, lessee, operator or entity in control of the aircraft operated on or about June 27, 2007, flight number 1319, as a common carrier to transport passengers.

64. Additionally, as a common carrier, defendant and its employees and agents, acting within the course and scope of their employment, agreed to carry plaintiff safely and thereby owed the highest degree of care to its passengers, including plaintiff, as a common carrier.

COMPLAINT
- 7 -

65. Defendant's captain, pilot, co-captains, co-pilots, flight attendants, cabin attendants, stewardesses, crew, pursers and other agents, personnel or independent contractors of defendants were responsible for piloting the plane, and providing care and services to the passengers aboard the flight.

66. Defendant was responsible for locating the nearest diversion point with appropriate medical facilities, and for contacting the airport and local emergency response units to facilitate care for plaintiff, a suffering passenger, in a medical emergency.

67. Defendant was also responsible for locating the nearest diversion point with appropriate medical facilities, and fo contacting the airport and local emergency response units to facilitate care for plaintiff, a suffering passenger, during a medical emergency.

68. Defendant was also responsible for the ticketing of passengers; soliciting the patronage of the traveling public; advertising schedules for routes, times of departure/arrival, rates of fare, and other travel related services; maintenance of the aircraft; scheduling of flights, purchasing of equipment; maintaining and complying with applicable aviation regulations; and, maintaining the relationship between the aircraft in question and the air traffic controllers and other governmental entities responsible at all times for the safe operation of the aircraft.

69. Due to the unusual, unexpected, inadequate and inappropriate conduct of defendant, the cabin attendants, and flight crew aboard flight 1319, and because they failed to respond appropriately, including wilfully and intentionally refusing his numerous requests to deplane, and ignoring his dire medical emergency, plaintiff was caused to suffer physical pain, severe emotional distress, and pain and suffering.

70. If defendant had proceeded to take the appropriate steps to allow plaintiff, who was in excruciating pain, to deplane upon his numerous requests to defendant, according to its policies, practices and procedures; and/or had defendant proceeded to take the appropriate steps to diagnose plaintiff's ailment and sought immediate treatment according to the policies, practices and procedures of defendant, and according to the standards of practice in the industry, including those imposed by law as a common carrier subject to the highest degree of care, plaintiff would not have suffered from extreme pain and damage from acute renal colic for the

COMPLAINT
- 8 -

extensive period of time to which he was caused to suffer, including needless physical pain, severe emotional distress, and pain and suffering.

## FIRST CAUSE OF ACTION
### False Imprisonment

71. Plaintiff hereby incorporates paragraphs 1-70, above, as though fully set forth herein.

72. Defendant and its employees and agents, acting within the course and scope of their employment, in doing the things alleged hereinabove, including but not limited to refusing several times to allow plaintiff deplane, while the plane was still on the ground; commanding plaintiff "sit down and shut up"; threatening plaintiff arrest in handcuffs by federal marshals unless he sat down and shut up; and refusing to inform the captain immediately of plaintiff's medical emergency wrongfully restrained, confined, and detained plaintiff.

73. Defendant and its employees and agents, acting within the course and scope of their employment, in doing the things hereinabove alleged, intentionally and wilfully deprived plaintiff of his freedom of movement by use of physical barriers, force and threats of force, menace, fraud, deceit, and unreasonable duress, including refusing to allow plaintiff to be let off the plane, while the plane was still on the ground, commanding plaintiff "sit down and shut up"; threatening plaintiff arrest in handcuffs by federal marshals unless he sat down and shut up; and refusing to inform the captain immediately of plaintiff's medical emergency.

74. Plaintiff did not knowingly or voluntarily consent to such restraint, confinement and detainment.

75. Plaintiff was actually harmed by such restraint, confinement and detainment.

76. Defendant's conduct was a substantial factor in causing plaintiff's harm.

77. The conduct of defendant has been sufficiently outrageous as to entitle plaintiff to an award of punitive damages. Punitive damages will deter the defendant's future outrageous conduct.

## SECOND CAUSE OF ACTION

### Intentional Misrepresentation

78. Plaintiff incorporates herein, as though fully set forth, paragraphs 1-77, above.

79. Defendant represented to plaintiff that defendant and its employees and agents, acting within the course and scope of their employment, will transport its passengers, including plaintiff, at all times with the primary concern of the health and safety of its passengers, including that of plaintiff.

80. Defendant's representation was false.

81. Defendant knew that the representation was false or defendant otherwise made said representation recklessly and without regard to the truth of the representation.

82. Defendant and its employees and agents, acting within the course and scope of their employment, intended plaintiff to rely on the representation.

83. Plaintiff, in relying on such representation, and in purchasing the ticket on defendant's airlines, was harmed as a result of such reliance.

84. Plaintiff's reliance on defendant's representation was a substantial factor in causing his harm.

85. The conduct of defendant has been sufficiently outrageous as to entitle plaintiff to an award of punitive damages. Punitive damages will deter the defendant's future outrageous conduct.

## THIRD CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

86. Plaintiff incorporates paragraphs 1-85 above, as though fully set forth herein.

87. Defendant and its employees and agents, acting within the course and scope of their employment, wilfully ignored standard procedures of defendant, including allowing plaintiff, who was ill, deplane upon his request; seeking emergency medical care for plaintiff; informing the captain of plaintiff's emergency need for medical care as soon as the medical emergency became known. Defendant's actions and the actions of its employees and agents, acting within the course and scope of their employment, were outrageous and in reckless

COMPLAINT
- 10 -

disregard for the consequences of their misconduct. This conduct intentionally violated the emergency medical care response procedures, and other policies and procedures of defendant; and, also violated the highest degree of care to which defendant is subject as a common carrier, all with the knowledge that such violations will cause plaintiff severe emotional distress.

88. Specifically, defendant and its employees and agents, acting within the course and scope of their employment, had actual and/or constructive knowledge that plaintiff was in great pain and in need of emergency medical care. Defendant and its employees and agents, acting within the course and scope of their employment, knew that their refusing to allow plaintiff, who was in need of emergency medical care, to deplane upon his request, will cause him severe emotional distress. Defendant and its employees and agents, acting within the course and scope of their employment, also knew delaying appropriate medical care will cause plaintiff severe emotional distress.

89. Notwithstanding this knowledge, defendant and its employees and agents, acting within the course and scope of their employment, wilfully refused to allow plaintiff to deplane, notwithstanding his need for emergency medical care; and wilfully refused to respond to plaintiff's medical emergency with proper medical attention; including informing the captain of the medical emergency; and furthermore continued to ignore plaintiff's excruciating pain in continuing the flight instead of allowing plaintiff to deplane or deviating the plane to a facility where adequate care could be administered readily. The actions of defendant and its employees and agents, acting within the course and scope of their employment, was wilful, wanton, reckless and constitutes outrageous conduct.

90. Defendant and its employees and agents, acting within the course and scope of their employment, by such aforesaid conduct, intended to cause plaintiff severe emotional distress.

91. Plaintiff suffered severe physical and emotional distress as a result of the wilful, wanton, reckless, and outrageous conduct of defendant and its employees and agents, acting within the course and scope of their employment, which conduct evidenced wilful and reckless

indifference to the safety, welfare, health and well-being of plaintiff, for which defendant and its employees and agents, acting within the course and scope of their employment, are liable.

92. Defendant's conduct was a substantial factor in causing plaintiff's severe emotional distress.

93. The conduct of defendant has been sufficiently outrageous as to entitle plaintiff to an award of punitive damages. Punitive damages will deter the defendant's future outrageous conduct.

## FOURTH CAUSE OF ACTION

### Negligence

94. Plaintiff incorporates, as though fully set forth herein, paragraphs 1-93, above.

95. At all times material herein, defendant owed a duty to the passengers on board flight 1319, and in particular, to plaintiff, to follow all federal aviation standards, rules and regulations, including operating and controlling the subject aircraft, on the ground and in the air, with the highest degree of care to which common carriers are subject; and to exercise the highest degree of care to prevent injury of any kind, including injury as a result of failure to respond to a medical emergency, according to the policies, procedures and practices of defendant.

96. The failure to adequately and appropriately respond to the medical emergency of plaintiff was a direct and immediate result of the negligence of defendant and its employees and agents acting with the course and scope of their employment, to fulfill the duty to plaintiff.

97. As a legal and proximate result of the aforementioned negligence of defendant and its employees and agents, acting with the course and scope of their employment, plaintiff was injured in health, strength and activity, and suffered physical pain, severe emotional distress, and pain and suffering.

## FIFTH CAUSE OF ACTION

### Negligent Infliction of Emotional Distress

98. Plaintiff incorporates as though fully set forth herein, paragraphs 1-97, above.

99. The failure to adequately and appropriately respond to the medical emergency of plaintiff was a direct and proximate cause and an immediate result of the negligence of defendant

and its employees and agents, acting with the course and scope of their employment, to fulfill the duty to plaintiff to meet the highest degree of care to which a common carrier is held, and to exercise the highest degree of care to prevent injury of any kind, including injury as a result of failure to respond to a medical emergency, according to federal rules and regulations, and pursuant to the policies, practices and procedures of defendant.

100. As a result of defendant's actions as hereinabove alleged, plaintiff suffered serious emotional distress, including suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame, all of which an ordinary reasonable person would be unable to cope.

101. Defendant's negligence was a substantial factor in causing plaintiff's serious emotional distress.

## SIXTH CAUSE OF ACTION

### Breach of Contract

102. Plaintiff incorporates as though fully set forth herein, paragraph 1-101, above.

103. Defendant owed a duty to plaintiff under its contract of carriage with plaintiff to use all possible care and diligence in transporting and delivering plaintiff safely and promptly to the destination.

104. Defendant was obligated to protect the passenger-plaintiff, from injuries arising through negligence of its crew, personnel, agents, servants, representatives, assignees, successors, employees, alter egos, independent contractors, partners, joint venturers, and/or employees while performing the contract.

105. Defendant breached that contract with plaintiff when defendant failed to provide safe transport that directly and proximately caused plaintiff's injuries and damages.

106. Plaintiff is entitled to such damages as to compensate him for the loss caused by the breach of contracting including injuries sustained by him during transport. Plaintiff sustained severe physical and mental pain and suffering and injuries, which naturally arose from defendant's failing to provide prompt medical care to passenger-plaintiff. Said injuries caused

plaintiff to sustain general and special damages in excess of the jurisdictional minimum in an amount subject to proof at trial.

## SEVENTH CAUSE OF ACTION

### Strict Liability

107. Plaintiff incorporates as though fully set forth herein paragraphs 1-106, above.

108. Defendant was a common carrier of passengers for hire, and owed plaintiff the duty of the highest degree of care under the general principles of tort law, as well as under federal rules and regulations, to provide services and transport in a manner to assure plaintiff's safety and well-being from New York to Miami.

109. On June 27, 2007, defendant and its employees and agents, acting within the course and scope of its employment, failed to provide services and transport in a manner to provide for plaintiff's safety and well-being from New York to Miami.

110. Defendant is vicariously and strictly liable for their failing to adhere to federal aviation rules and regulations, for the negligence, dangerousness and incompetence of the employees and agents of defendants, acting in the course and scope of their employment, including but not limited to those who committed intentional torts upon plaintiff; i.e.. for false imprisonment, intentional misrepresentation, and intentional infliction of emotional distress.

111. Defendant's vicarious and strict liability to plaintiff for the negligence, dangerousness and incompetence of its employees and agents, acting in the course and scope of their employment, during transit rests upon defendant's special implied duty of protection and safe transport that it owes as a common carrier through its employees to its passenger.

112. Defendant's duty to plaintiff was a special duty, non-delegable, that was owed by the carrier to plaintiff.

113. The actions and/or omissions of defendant and its employees and agents, acting within the course and scope of their employment, on or about June 27, 2007, were the producing cause of plaintiff's damages and injuries, as hereinbefore described.

## PRAYER

Wherefore, plaintiff demands judgment as follows:

(1) An award of general damages for the defendant's wrongful acts;

(2) An award of the special damages for the defendant's wrongful acts;

(3) An award of costs and disbursements incurred in this action, as provided by state and federal law;

(4) An award of attorneys' fees as provided by state and federal law;

(5) An award of punitive damages for the defendant's reprehensible and outrageous conduct ;

(6) Any additional relief this Court deems just and proper.

DATED: June 23, 2008

**LORBER-NELSON LLP**

By: *[signature]*
STEVEN H. LORBER
Attorneys for Plaintiff

## JURY DEMAND

Plaintiff demands a jury by trial of all issues.

DATED: June 23, 2008.

**LORBER-NELSON LLP**

By: *[signature]*
STEVEN H. LORBER
Attorneys for Plaintiff

COMPLAINT
- 15 -

**JS 44** (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Art Morgenstern

**DEFENDANTS**
American Airlines, Inc.

FILED
2008 JUN 25 PM 2:31

(b) County of Residence of First Listed Plaintiff: **San Diego**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: **Dallas, Texas**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

BY _VMT_ DEPUTY

(c) Attorney's (Firm Name, Address, and Telephone Number)
Steven H. Lorber, Lorber Nelson, LLP, 12526 High Bluff Drive, suite 300, San Diego, Ca 92130, (858) 792-3477

Attorneys (If Known)
**'08 CV 1135 DMS LSP**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☒ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | / ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | / ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | / ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |
| | ☐ 440 Other Civil Rights | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): 28 USCA 1332

Brief description of cause: Plaintiff suffered medical problems before take off, refuse to be let off the plane.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 75,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE ____ DOCKET NUMBER ____

DATE: 06/25/08
SIGNATURE OF ATTORNEY OF RECORD: _[signature] Steve D. Lorber_

**FOR OFFICE USE ONLY**
RECEIPT # 152295   AMOUNT $350   APPLYING IFP ____   JUDGE ____   MAG. JUDGE ____
JAC 6/25/08

CF

```
           UNITED STATES
           DISTRICT COURT
        SOUTHERN DISTRICT OF CALIFORNIA
             SAN DIEGO DIVISION

        # 152295      - TC

           June 25, 2008
             14:33:15


           Civ Fil Non-Pris
    USAO #.: 08CV1135
    Judge..: DANA M SABRAW
    Amount.:              $350.00 CK
    Check#.: BC1411



        Total->   $350.00



    FROM: ART MORGENSTEIN
          VS.
          AMERICAN AIRLINES
```